**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                         CASE NO: 3:17-cr-224-MMH-MCR

ROBERT HECK                                  ORDER ON MOTION FOR
                                                         SENTENCE REDUCTION UNDER
                                                         18 U.S.C. § 3582(c)(1)(A)

_____

**O R D E R**

This case is before the Court on Defendant Robert Heck's Motion for
Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). (Doc. 46, Motion). Heck is a
45-year-old inmate incarcerated at Jesup FCI, serving a 33-month term of
imprisonment for possession of heroin and 500 grams or more of cocaine with intent
to distribute such substances. (Doc. 39, Judgment). According to the Bureau of
Prisons (BOP), he is scheduled to be released from prison on January 27, 2022. Heck
seeks early release because of the Covid-19 pandemic and because of his medical
conditions, which include type 2 diabetes, hypertension, obesity, obstructive sleep
apnea, mild diastolic dysfunction as detected by an echocardiogram, and an alleged
thyroid disorder. See Motion; (Doc. 48, Supplement to Motion). Heck also asserts that
the prison is not appropriately managing his medical conditions. The United States
filed a response in opposition (Doc. 49, Response) and Heck filed a reply (Doc. 52,
Reply).

The Court held hearings on the Motion on November 23, 2020, and January
28, 2021, at which the Court received evidence and heard testimony from witnesses

for both parties. The parties thereafter filed supplemental briefs. (Doc. 73, Gov't Supplemental Brief; Doc. 74, Heck's Supp. Brief). The Court has considered each of Heck's arguments and medical conditions, as well as the exhibits and testimony submitted by both parties. After considering the factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, the Court concludes that the Motion is due to be denied on the merits.

## I.    Legal Principles

A movant for compassionate release bears the burden of establishing that a sentence reduction is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A). "Given the permissive language [of § 3582(c)(1)(A)], a district court's decision whether to grant or deny a defendant's request for a sentence reduction is discretionary." United States v. Winner, No. 20–11692, 2020 WL 7137068, at *2 (11th Cir. Dec. 7, 2020). Notably, the Third Circuit Court of Appeals has observed that the mere existence of Covid-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive

and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

## II.   Evidentiary Hearing

As noted, the Court conducted hearings on Heck's Motion on November 23, 2020, and January 28, 2021. Heck presented the testimony of Brenda Heck (Heck's mother and a registered nurse), Treva Marshall (Heck's sister), and Dr. Terrance Baker (a physician certified in family medicine, emergency medicine, and geriatric medicine, and who has written six articles on the SAR-CoV-2 virus). The government presented the testimony of Captain Mitchell Holliday (who oversees nutritional management of the BOP's national menu) and Dr. Angel Ortiz (the BOP medical director for the Southeast region). The Court also received exhibits, including medical records, from both parties.

Ms. Heck and Ms. Marshall generally testified about concerns with Jesup FCI's management of Heck's conditions. Ms. Heck recalled that, during Heck's term of incarceration, he has experienced episodes of lightheadedness, dizziness, and swelling of the legs, which in her opinion relate to his poorly-managed diabetes or blood pressure. She expressed concern that Jesup FCI was not administering routine A1C[1] and daily fingerstick tests to monitor Heck's blood sugar, and that the facility allegedly switched or reduced Heck's blood pressure and diabetes medications to save

---

[1]      "A1C" is a form of hemoglobin that is tied to long-term blood sugar levels. According to the American Diabetes Association, its measurement is a key indicator of how well a person is managing their diabetes, with lower levels being desired.

money.[2] Ms. Heck also testified that Jesup FCI was not providing Heck with a suitable diet to manage his diabetes and blood pressure. Ms. Heck acknowledged that much of her testimony was based on Heck's account of his situation and the limited records she had been given. In addition, Ms. Marshall expressed frustration with what she believed was the facility's slow response to Heck's medical needs, such as failing to promptly provide Heck with clean tubes for his CPAP machine (which Heck uses to manage his sleep apnea).

Dr. Baker testified about Heck's diagnoses, the management of his conditions, and the Covid-19 pandemic. Dr. Baker's testimony was based on records provided by Heck's counsel (see Doc. 46-3, Movant's Medical Records), which did not include records from 2021. Dr. Baker testified that Heck has type 2 diabetes, hypertension, obesity, sleep apnea, chronic sinusitis, and herniated disc disease, that Heck has experienced tachycardia (rapid heartbeat), and that he suspects Heck has an undiagnosed thyroid condition as well. According to Dr. Baker, each of these conditions, as well as Heck's race as an African-American, are associated with an increased risk of severe illness from Covid-19. Dr. Baker further testified that, in his opinion, he had not seen evidence that Heck's conditions were being properly managed. For example, Dr. Baker testified that he had not seen evidence of Heck receiving regular A1C measurements, daily fingerstick tests, annual fundoscopic and

---

[2]     Ms. Heck's testimony about alleged changes to Heck's medications was not entirely clear, but she appeared to assert that the BOP (1) eliminated one of two blood pressure medications that Heck had previously taken, (2) switched the remaining blood pressure medication to a different one, and (3) eliminated one of the two diabetes medications Heck had previously taken.

podiatric exams (which can detect diabetes-related complications of the eyes and lower extremities), or appropriate follow-up testing to investigate a suspected thyroid condition.[3] As for Covid-19, Dr. Baker testified that prison is an unsafe environment because prisons cannot or do not provide fresh masks, social distancing, adequate ventilation, good sanitation and hygiene, or Covid-19 testing. Dr. Baker estimated that, due to the alleged mismanagement of Heck's conditions, if Heck were to develop Covid-19 his risk of death was 50% or greater.[4] Dr. Baker also opined that Heck has not received the same quality of care as a private citizen and that he would be safer at home.

On behalf of the government, Captain Holliday described the BOP's nutritional programs. Captain Holliday testified that the BOP issues a standardized national master menu, which offers inmates three general options: regular, heart-healthy, and "no-flesh" (or vegan). The heart-healthy option consists of a low-calorie, low-sodium, low-fat diet, which Captain Holliday testified is suitable for diabetic inmates. Captain Holliday stated that the BOP also provides inmates with nutritional information

---

[3]    Dr. Baker repeatedly testified that he did not "see" evidence in the medical records of Heck receiving certain tests and treatments, which formed much of the basis for his opinion that Heck has not received adequate medical care. However, that might be because Dr. Baker's testimony was based on a review of the incomplete records provided by Heck's counsel rather than a review of Heck's comprehensive medical file.

[4]    Heck asserts that Dr. Baker's opinion "confirmed" data he allegedly submitted to the Court that an African-American with Heck's conditions has a 50% chance or greater of dying if he contracts Covid-19. Heck's Supp. Brief (Doc. 74) at 4. However, Heck provides no citation to the record identifying where he submitted this data and the Court, independently, did not locate data pinpointing such a high likelihood of death. Heck did submit data showing that, because "[r]ace and ethnicity are risk markers for other underlying conditions that affect health," being African-American is correlated with being 2.8 times more likely to die of Covid-19 compared to Caucasians. (Doc. 67-12). However, this is not the same as showing that Heck's risk of dying is 50% or greater if he develops Covid-19.

about menu items, which inmates can use to further customize their diets. As Captain Holliday summarized, the BOP's approach is to "create the framework for [an] individual to self-manage," consistent with guidance from the American Diabetes Association that self-management is key to controlling diabetes.

Finally, Dr. Ortiz testified on behalf of the government about the medical services available at Jesup FCI and the management of Heck's health conditions. Dr. Ortiz reviewed the majority of Heck's medical record, consisting of Heck's complete file as maintained by the Bureau's Electronic Medical Records ("BEMR"). According to Dr. Ortiz, Jesup FCI is a "care level 2" facility, which means it houses inmates with stable chronic conditions and can treat inmates at an outpatient level. For emergencies, the facility can refer an inmate to an outside hospital, the nearest of which is three and a half miles away. Dr. Ortiz testified that Jesup FCI has a nurse practitioner and a physician assistant on-site to provide routine care. As of January 2021, the facility did not have an on-site physician but was working to recruit one. In the meantime, the BOP has a "medical asset support" (MAS) team, consisting of physicians, nurses, and other staff, which can operate at a facility on an as-needed basis. In addition, Jesup FCI offers telemedicine visits and has 24-hour access to physician consultations by phone. If an inmate has a non-emergency situation that requires a specialist's attention, Dr. Ortiz stated the facility can and will refer the inmate to a specialist in the community.

Dr. Ortiz described Jesup FCI's modified operations regarding Covid-19. New measures include controlling inmate movements; testing, quarantining, and

retesting new arrivals for Covid-19 before moving them into the general population; providing inmates a mask; screening staff daily; isolating inmates who are or may be positive for Covid-19; and contact-tracing. Dr. Ortiz also stated that to treat mild-to-moderate cases of Covid-19, the facility has access to monoclonal antibody therapy, which it can obtain on a next-day basis. In addition, Dr. Ortiz testified that vaccinations at Jesup FCI were to begin on February 8, 2021, beginning with staff and high-risk inmates before being administered to all other inmates. As of this writing, it does not appear that Heck has been vaccinated. Dr. Ortiz testified that Jesup FCI has experienced three outbreaks of Covid-19, but he emphasized that Heck has not been exposed to any of these outbreaks because he has been in special housing since May 2020, and so has effectively been isolated from each outbreak.

Regarding the management of Heck's medical conditions, Dr. Ortiz's testimony differed from that of Dr. Baker about the quality of care that Heck has received. Whereas Dr. Baker testified that he had not seen evidence of Heck's A1C or thyroid condition being monitored, Dr. Ortiz stated that Heck had a telehealth visit with a physician on November 18, 2020, after which Heck underwent lab work to assess his A1C level and thyroid function. According to Dr. Ortiz, Heck's A1C measured 7.2 in December 2020, which is "at goal" for someone who is diabetic. Based on the lab work, Dr. Ortiz testified that Heck is responding well to his diabetes medication (Metformin) and he would not alter his treatment. Dr. Ortiz also stated that if a person's A1C is at goal, the "community standard" is to measure their A1C only once every six to twelve months.

Dr. Ortiz responded to Dr. Baker's testimony that he had not seen evidence of Heck receiving an annual fundoscopic or podiatric exam. Dr. Ortiz stated that Heck was examined by an optometrist on January 23, 2020, and that he would be due soon for another exam. Additionally, the medical record reflects that a bilateral monofilament exam was performed during Heck's telemedicine visit in November 2020, and that examination of his feet revealed no lesions. (See Doc. 73-1, Gov't Supplemental Medical Records at 3).[5]

Dr. Ortiz also disagreed with Dr. Baker about how much investigation Heck's suspected thyroid condition warrants. Whereas Dr. Baker testified that Heck needs a biopsy, ultrasound, and lab work to examine his thyroid, Dr. Ortiz testified that the only clinical evidence of a thyroid disorder he had seen was tachycardia, which could have other causes as well, such as exercise, stress, or dehydration. In addition, contrary to testimony by Ms. Heck that Jesup FCI switched Heck's blood pressure medication to save money, Dr. Ortiz testified that such was not the case. Dr. Ortiz explained that Heck was receiving the same blood pressure medication he was taking when he entered custody, and that he was now receiving a water pill as well to relieve edema. In concluding his testimony, Dr. Ortiz stated that he and BOP healthcare staff are trained to provide inmates the same quality of care as patients in a private healthcare setting. Because Dr. Ortiz had the benefit of Mr. Heck's complete medical records, including more recent medical records not seen by Dr. Baker, to the extent

---

[5]     Dr. Ortiz explained that during a telehealth visit, a physician is present by videoconference while an advanced care provider is in the room with the inmate to perform any examinations as directed by the physician.

his opinions differ from Dr. Baker's the Court credits Dr. Ortiz's testimony.

## III.   Discussion

Heck has not demonstrated reasons so "extraordinary and compelling" as to justify compassionate release. 18 U.S.C. § 3582(c)(1)(A). Congress has not defined the phrase "extraordinary and compelling" by statute, so the Court gives these terms their plain meaning. See Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 566, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning.").[6] According to Merriam-Webster's Dictionary, "extraordinary" means "going beyond what is usual, regular, or customary" or "exceptional to a very marked extent."[7] The word "compelling" means "forceful," "demanding attention," or "convincing."[8] Viewed against this standard, Heck's circumstances are not "extraordinary and compelling."

To a significant degree, much of Heck's case for compassionate release centers around his dissatisfaction with the quality of medical care provided at the facility where he is serving his sentence, such as the alleged lack of daily blood sugar testing,

---

[6]   Pursuant to 28 U.S.C. § 994(t), the United States Sentencing Commission defined what qualifies as extraordinary and compelling circumstances in U.S.S.G. § 1B1.13, cmt. 1. However, there is a split of authority over whether § 1B1.13 applies to defendant-filed motions for compassionate release. See, e.g., United States v. Ruffin, 978 F.3d 1000, 1006–08 (6th Cir. 2020). The Court's decision does not depend on the resolution of that issue because its ruling would be the same whether or not it is bound by § 1B1.13.

[7]   https://www.merriam-webster.com/dictionary/extraordinary?src=search-dict-hed. Black's Law Dictionary offers a similar definition. In relevant part, "extraordinary" means "1. Beyond what is usual, customary, regular, or common," or "4. Of, relating to, or involving an occurrence, esp. an incident or accident, that would not have been foreseeable to someone of normal prudence." Black's Law Dictionary (11th ed. 2019), "Extraordinary."

[8]   https://www.merriam-webster.com/dictionary/compelling.

the prison's failure to promptly provide him clean parts for his CPAP machine, and the facility's failure to follow-up on a suspected thyroid condition. However, a defendant's "mere dissatisfaction with [his] course of medical treatment … do[es] not create such extraordinary and compelling reasons as to justify a sentence reduction." United States v. Allen, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019). "[Heck] may be dissatisfied with the level of care he is receiving, but that is not a basis for early release." United States v. Greenhut, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *2 (C.D. Cal. Jan. 31, 2020). While the Court understands that Heck and his family members are frustrated with the scope and responsiveness of his medical care, the record reflects that Heck has received adequate care and that the BOP has not ignored his medical needs.[9]

The Court recognizes that Heck has several medical conditions, some of which are known or suspected to increase the risk of serious illness from Covid-19.[10] Namely, according to the Centers for Disease Control (CDC), type 2 diabetes and obesity are known to increase the risk of developing severe Covid-19. Hypertension might increase the risk of severe illness as well.[11] The Court also recognizes that these conditions may cumulatively aggravate the risk of complications if Heck were

---

[9]    Throughout the presentation of evidence, Mr. Heck's witnesses testified that he or the family had the financial resources to obtain healthcare for him if released as well as the belief that he could obtain better healthcare in that way. However, Heck points to no legal authority suggesting that the fact that he has the financial resources to get healthcare that he may well prefer would present a proper basis for a reduction of his sentence.

[10]    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[11]    The CDC does not recognize Heck's other conditions, such as chronic sinusitis, sleep apnea, or herniated disc disease, as affecting the risk of severe illness from Covid-19.

to develop Covid-19.

> However, merely being at higher risk for serious complications from
> COVID-19 is not, by itself, sufficient for the Court to find the requisite
> extraordinary and compelling reasons for compassionate release. That
> is, not every prisoner at higher risk for serious complications from
> COVID-19 is entitled to immediate release from incarceration. [Heck]
> here does not show that his underlying medical condition substantially
> diminishes his ability to provide self-care in a correctional environment,
> or that the BOP is unable to meet his medical needs. Although [Heck]
> expresses dissatisfaction with his present prison medical care, he has
> not submitted medical records showing an actual deficiency in his
> medical care[.]

United States v. Salinas, No. CR H-19-309, 2020 WL 4352606, at *4 (S.D. Tex. July

29, 2020).[12]

Contrary to Heck's allegations, the evidence reflects that his conditions are

appropriately managed and monitored. Heck is prescribed Metformin to treat his

diabetes, which Dr. Ortiz testifies is working well for him. Heck's most recent A1C

test, performed in December 2020, measured 7.2, which Dr. Ortiz described as "at

goal." Dr. Baker did not specifically dispute this characterization. Indeed, Dr. Ortiz's

testimony is consistent with guidance issued by the American Diabetes Association,

which advises that an A1C level of 7 or less is the goal for adults with diabetes.[13]

Moreover, the evidence reflects that Heck has undergone optometric and podiatric

---

[12]     Moreover, none of Heck's conditions is extraordinary. The CDC reports that as of
2017-2018, 42.4% of the population in the United States was obese. Similarly, the CDC
reports that 108 million adults in the United States (about 45% of the adult population) have
high blood pressure or take medication for the condition. Diabetes is less common but still
unexceptional. According to the CDC, more than 34 million Americans (about 1 in 10) have
diabetes, with 90–95% of these individuals having Type 2 diabetes. Many people with one of
these conditions have one or more of the others, so it is not uncommon for someone to present
with several or all of these conditions.

[13]     https://www.diabetes.org/a1c.

11

examinations within the past year or so, consistent with the standard of care for treating diabetic inmates. See, e.g., Gov't Supp. Med. Records at 3. Contrary to allegations by Ms. Heck that Jesup FCI switched Heck's medications to save money, Dr. Ortiz explained that Heck continues to receive the same blood pressure medication he was prescribed when he entered custody, and that he receives a water pill as well to manage edema.[14]

Heck accuses the BOP of failing to properly manage his conditions, but the record fails to support this allegation. Notably, all of Heck's major conditions have improved since he entered BOP custody. According to a private physician's report from January 18, 2019 – before Heck began his term of incarceration – his body mass index (BMI) measured 39.23, his blood pressure measured 147/94, his heart rate was 121 beats per minute, and his A1C measured 9.1. Movant's Med. Records (Doc. 46-3) at 4–5. The report described Heck's diabetes and blood pressure as "uncontrolled." Id. at 2, 5. The doctor noted that Heck "has high sugars due to his diabetes," was "not able to [buy] his medicines because he has no medical insurance," and was unable to

---

[14]     Ms. Heck also testified that after entering the BOP's custody, Heck went from taking two medications for diabetes to one of those medications. According to the Presentence Investigation Report, Heck was prescribed Metformin and Jardiance to treat his diabetes before he entered BOP custody. (PSR at ¶ 47) (the PSR states that Heck was prescribed atorvastatin as well, but atorvastatin is for high cholesterol rather than diabetes). Currently, the record reflects that Heck is prescribed only Metformin to manage his diabetes. Ms. Heck acknowledged that she did not know the actual reason why Heck's second diabetes medication was discontinued, merely speculating that it was a cost-saving measure. Nevertheless, Heck's diabetes appears to be well-managed, and even Dr. Baker did not question which blood pressure and diabetes medications were currently being prescribed. Moreover, although Heck was prescribed two diabetes medications before he entered BOP custody, the record reflects that Heck did not always take his prescribed medications because he could not afford them. Movant's Med. Records (Doc. 46-3) at 1–5.

have lab work performed because of a lack of insurance. Id. at 2.[15] In contrast, Heck now has access to medication and lab work to manage his conditions. Across the board, Heck's metrics have improved while in the BOP's custody: his BMI now measures 36, his A1C is down to 7.2, and his blood pressure and pulse recently measured 124/84 and 88 beats per minute, respectively, Gov't Supp. Med. Records at 1–2.

Heck suggests that it has no bearing on his risk of developing severe Covid-19 whether his conditions are managed. See Heck's Supp. Brief (Doc. 74) at 3. But the medical profession does not appear to support this contention. The American Diabetes Association states that a person's "risk of getting very sick from COVID-19 is likely to be lower if [their] diabetes is well-managed," since "above-target blood sugars" may worsen inflammation.[16] Similarly, the Mayo Clinic reports that

> [t]he latest evidence shows that people with uncontrolled or untreated high blood pressure may be at risk of getting severely ill with COVID-19. It's also important to note that people with untreated high blood pressure seem to be more at risk of complications from COVID-19 than those whose high blood pressure is managed with medication.

William F. Marshall, III, M.D., COVID-19 and high blood pressure: Am I at risk?, Mayo Clinic (Jun. 30, 2020), https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-high-blood-pressure/faq-20487663. Thus,

---

[15]   Heck had a follow-up appointment with the same physician in May 2019, but his metrics at that time were not much better (or were worse) compared to the January 2019 visit. Movant's Med. Records at 8-14. His BMI measured 39.03, his blood pressure and pulse were 130/86 and 108 beats per minute respectively, and his A1C was 11.6. Id. at 10-11.

[16]   https://www.diabetes.org/coronavirus-covid-19/how-coronavirus-impacts-people-with-diabetes.

managing diabetes and high blood pressure likely reduces the risk of severe illness from Covid-19, and the record shows that Jesup FCI is effectively managing these conditions with respect to Heck.

Heck also raises concerns about an abnormal echocardiogram, which he believes may be attributable to his sleep apnea. See Motion at 8-9; Movant's Med. Records at 35-37. Heck underwent an echocardiogram in March 2020, which detected normal patterns with respect to aortic systolic, pulmonic systolic, mitral diastolic, and tricuspid diastolic blood flow, but found "trace regurgitation." Movant's Med. Records at 35-36. The study concluded that Heck has type 1 diastolic dysfunction, id. at 36, or impaired relaxation of the heart, which appears not to be an abnormal finding and one that occurs in nearly 100% of the population by age 60.[17] Indeed, a report on Heck's first echocardiogram concluded that Heck had a "[n]ormal echo study." Movant's Med. Records at 36. A second echocardiogram in June 2020 reflected that Heck had "sinus tachycardia" with "left axis deviation" but nevertheless described the results as being "without significant abnormalities." Id. at 37. Thus, Heck's echocardiograms cannot be said to have revealed any significant heart defects.

The Court further notes that Jesup FCI has undertaken extensive precautions to contain the spread of Covid-19, as described by Dr. Ortiz. Jesup FCI has the ability to treat inmates who develop Covid-19, either by obtaining monoclonal antibody therapy or referring an inmate to a nearby hospital. Moreover, the BOP's latest data

---

[17]    https://www.healio.com/cardiology/learn-the-heart/cardiology-review/topic-reviews/diastolic-dysfunction.

reflects that Jesup FCI has fared no worse than many other large facilities. Out of 1,364 prisoners, 3 inmates and 20 staff members are currently positive for coronavirus, 2 inmates have died, and 492 inmates and 3 staff members have recovered.[18] Although Jesup FCI has experienced three coronavirus outbreaks, Heck has not been exposed to any of these due to his placement in special housing.

At the hearings, Heck's family also raised concerns about the quality of the diet being provided at Jesup FCI, particularly as it relates to Heck's ability to manage his hypertension and diabetes. Ms. Heck testified that according to a letter from her son, in November or December 2020 Heck and other inmates were forced to eat outdated sandwiches and outdated hummus because the kitchen staff had been sent home due to Covid-19. However, as Ms. Heck acknowledged at the second hearing, the kitchen staff had returned to the prison by then. Captain Holliday testified that the BOP offers a nationally standardized master menu, which gives inmates the option of selecting a heart-healthy menu or a no-flesh menu as an alternative to the regular menu. In addition, Captain Holliday stated that the BOP provides inmates with nutritional information so that they can customize their diets as needed. According to Captain Holliday, this approach is consistent with guidance from the American Diabetes Association that self-management is key to controlling diabetes. Heck did not present any evidence that contradicted this testimony, although Heck questioned Captain Holliday about whether he was personally aware of whether the BOP's nutritional policies were being implemented at Jesup FCI. Upon review of the

---

[18]     https://www.bop.gov/coronavirus/. Last accessed March 29, 2021.

record, the evidence does not show that the quality of the diet at Jesup FCI is so deficient as to qualify as an "extraordinary and compelling" reason for a sentence reduction, either alone or in combination with Heck's conditions. Indeed, as noted before, Heck's diabetes, hypertension, and obesity appear to be well managed, as evidenced by the fact that his A1C levels, blood pressure, and BMI have improved during his time in BOP custody.

Under all the circumstances, the Court concludes that Heck has not demonstrated truly extraordinary and compelling reasons to justify compassionate release. Heck is not elderly, his conditions are relatively commonplace and appear to be well managed, and Jesup FCI is adequately responding to the Covid-19 pandemic.

Finally, putting aside extraordinary and compelling circumstances, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. See 18 U.S.C. § 3582(c)(1)(A). Although Heck is in the final year of his 33-month term of imprisonment, this is Heck's second term in prison for a violation of the Controlled Substances Act. In 2008, Heck was convicted in this Court of conspiracy to distribute five kilograms or more of cocaine, for which he was also sentenced to a term of 33 months in prison. (Doc. 20, Presentence Investigation Report [PSR] at ¶ 31). In both cases, Heck significantly benefited from a sentence reduction because he cooperated with the government. However, the first 33-month prison sentence failed to deter Heck from committing another serious drug offense. At the sentencing hearing, the Court expressed optimism that Heck had turned a corner in his life, but also expressed some reservation about imposing a term of imprisonment that was no

longer than the previous one. (Doc. 50, Sentencing Transcript at 37–41). The Court stated that it could not "conclude that a sentence of less than 33 months [the same length as his prior sentence] would be in any way near adequate to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment. And it certainly wouldn't accomplish deterrence, because deterrence was not accomplished previously." Id. at 41.[19] In view of all the § 3553(a) factors, a reduction of Heck's sentence at this time is not warranted.

Accordingly, for the reasons discussed above, Defendant Robert Heck's Motion for Compassionate Release (Doc. 46) is **DENIED.**

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc 19
Copies:
Counsel of record
Defendant

---

[19]    The BOP referred to the United States Attorney's Office for the Southern District of Georgia a complaint that Heck smuggled a cell phone into Jesup FCI, which is a misdemeanor under 18 U.S.C. § 1791(b)(5). (See Doc. 78). The United States filed an information against Heck in January 2021. Id. The Court has been advised that the charge was resolved on March 5, 2021. This matter does not affect the Court's decision.